# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| KEESHA D. WARRIOR, )<br>)<br>   Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN V. COLVIN, )<br>Acting Commissioner )<br>of Social Security, )<br>)<br>   Defendant. ) | Case No. 4:13-CV-00487-NKL |

**ORDER**

Before the Court is Plaintiff Keesha Warrior's appeal of the Commissioner of Social Security's final decision denying her application for supplemental disability insurance benefits. For the reasons set forth below, the Commissioner's decision is affirmed.

**I.    Background**

A complete summary of the record is not necessary; the following will suffice for purposes of this appeal. Plaintiff was born in March 1982, completed the tenth grade, and has prior work experience as a fast food worker and babysitter. [TR-30-33]. Plaintiff alleges she became disabled on February 1, 2011, due to fibromyalgia, asthma, hepatitis C, status post bilateral osteotomy changes to the first metatarsal bones, edema, mild obesity, gastritis and gastroesophaegeal reflux disease, bipolar disorder, rheumatoid arthritis, COPD, cardiopulmonary disease, and a liver condition.

1

Plaintiff does not challenge many of the ALJ's findings and conclusions. The ALJ found Plaintiff suffered from the following severe impairments: fibromyalgia, asthma, hepatitis C, status post bilateral osteotomy changes to the first metatarsal bones, intermittent bilateral edema of the lower extremities, and mild obesity. [TR-12]. The ALJ determined Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. § 416.967(b). She concluded the Plaintiff could lift or carry ten pounds frequently and twenty pounds occasionally, could stand, walk, or sit for up to six hours in an eight hour day, could frequently climb ramps and stairs, frequently stoop, kneel, crouch, and crawl, and could never climb ladders, ropes, or scaffolds. She determined Plaintiff should avoid extreme cold, extreme heat, humidity, and pulmonary irritants. [TR-14]. In making this conclusion, the ALJ relied on Plaintiff's medical records including various treatment notes and a 2010 Residual Functional Capacity report filled out by Plaintiff's treating physician, Dr. Houston Gray. The ALJ gave Dr. Gray's report partial weight as to her physical limitations. [TR-17-18]. Dr. Gray opined Plaintiff was capable of low stress jobs, could lift or carry up to 20 pounds frequently, could stand, walk, or sit for up to six hours in an eight hour day, could grasp, turn, and twist objects up to 50% of the day, could finger and reach up to 50% of the day, and could stoop 15% of the day. [TR-362-66]. Dr. Gray opined Plaintiff would sometimes need to take unscheduled breaks and would need a job permitting her to shift positions at will. Dr. Gray also remarked Plaintiff would need to walk every 10 minutes, but on the same page stated she could sit or stand for up 45 minutes at one time. [TR- 364]. Plaintiff would not need to elevate her feet or use an assistive device for walking. [TR-365]. The ALJ

2

did not give Dr. Gray's fingering and handling restrictions any weight and remarked that Plaintiff rarely, if ever, reported difficulty with her hands, and Plaintiff's medical records reflect full motor strength and normal coordination. [TR-18].

Plaintiff alleges two points of error in the ALJ's decision. First, Plaintiff argues the ALJ did not properly evaluate how Plaintiff's fibromyalgia affects her ability to work and argues the ALJ's conclusions related to Plaintiff's fibromyalgia are inconsistent with SSR 12-2P and Eighth Circuit precedent. [Doc. 20, at p. 20]. Second, Plaintiff argues the ALJ's decision is not based on substantial evidence in the record because the ALJ failed to consider third-party evidence and observations related to Plaintiff's symptoms and abilities. [Doc. 20, at p. 22]. Because Plaintiff's alleged points of error are related to her fibromyalgia diagnosis, a discussion of her treatment records relating to that diagnosis is necessary.

Plaintiff's medical records do contain a medical history of fibromyalgia. Plaintiff specifically complained of fibromyalgia on June 4, 2010, at an appointment with Dr. Gray. [TR-230]. At that appointment, Plaintiff complained of swelling in her feet and told Dr. Gray that she had recently visited the emergency room. Dr. Gray put Plaintiff on a medication trial and prescribed exercise. [TR-230]. Though various other medical records indicate a diagnosis of fibromyalgia, it does not appear Plaintiff's fibromyalgia was ever the primary purpose of her visits and very few records mention treatment. Plaintiff frequently complained of swelling in her lower extremities which was largely attributed to edema. *See e.g.*, [TR-456]. The ALJ acknowledged Plaintiff's fibromyalgia and found it to be a severe impairment but remarked that she has only occasionally

3

reported related difficulties, has not sought emergency treatment or hospitalization, and was prescribed an exercise regimen by her treating physician, which is a treatment plan inconsistent with Plaintiff's allegations that she can do minimal physical activity. [TR-15].

## II. Discussion

The Commissioner's findings are reversed "only if they are not supported by substantial evidence or result from an error of law. In this substantial-evidence determination, the entire administrative record is considered but the evidence is not reweighed. Substantial evidence is less than preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012). "In determining whether existing evidence is substantial, [the Court] consider[s] evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000). "If substantial evidence supports the Commissioner's conclusions, [the Court] does not reverse even if it would reach a different conclusion, or merely because substantial evidence also supports the contrary outcome." *Byes*, 687 F.3d at 915.

### A. The ALJ's Evaluation of Plaintiff's Fibromyalgia and SSR 12-2P

Plaintiff first argues the ALJ did not properly consider her testimony concerning the severity of her fibromyalgia symptoms and how they affect her ability to work. At her hearing and in her function report, Plaintiff testified that she suffered from swelling in her legs and feet, loss of grip strength in her hands, fatigue, and pain in her joints which causes her to stay in bed all day. Plaintiff argues the ALJ's findings regarding her

4

fibromyalgia are inconsistent with decisions by the Eighth Circuit and Social Security Ruling 12-2P, a 2012 decision providing clarification on the evaluation of fibromyalgia for disability determinations. *See* SSR 12-2P, available at 2012 WL 3104869.

Though SSR 12-2P is not binding law, it provides guidance to an ALJ considering whether a claimant's symptoms constitute a medically determinable impairment. There are several symptoms identified as consistent with a fibromyalgia diagnosis including pain in all quadrants of the body, tiredness and fatigue, cognitive or memory problems, waking unrefreshed, depression, anxiety, irritable bowel syndrome, muscle pain, and muscle weakness. *Id.* at *2, *3 note 9.

Contrary to Plaintiff's allegations, the ALJ properly identified Plaintiff's symptoms as consistent with fibromyalgia. The ALJ determined Plaintiff's fibromyalgia was a severe impairment at step two of her determination. [TR-12]. She cited a number of symptoms identified in SSR 12-2P, including loss of grip strength, fatigue, and acknowledged that Plaintiff alleged she experienced a variety of physical and mental impairments that limit her ability to sit, stand, walk, lift, carry, and perform basic physical and mental work activities. [TR-14, 16]. The ALJ considered Plaintiff's alleged symptoms, but only found Plaintiff partially credible based on her conservative treatment history and Plaintiff's relatively few complaints about it to her physicians. [TR-15]; *see also Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("As the claimant's credibility is primarily for the ALJ to decide, not the courts, the Court will generally defer to the ALJ's credibility finding if the ALJ explicitly discredits the claimant's testimony and gives good reason for doing so.") (internal citations omitted). SSR 12-2P specifically

5

states that in considering the intensity and persistence of a person's pain or symptoms, the ALJ may consider the medical records, medications or other treatments the person uses, and the nature and frequency of the person's attempts to obtain medical treatment for symptoms. SSR 12-2P, 2012 WL 3104869, at *5. It also states the ALJ should consider a claimant's activities of daily living, which the ALJ discounted as exaggerated, and Plaintiff did not challenge this credibility determination. [TR-16].

Plaintiff also appears to argue that because the ALJ did not explicitly reference SSR 12-2P in her decision, the ALJ failed to consider its guidance in evaluating Plaintiff's fibromyalgia. However, as discussed above, the ALJ's determination was consistent with SSR 12-2P; just because the ALJ did not cite to SSR 12-2P does not mean the ALJ did not consider it in forming her decision. Even if Plaintiff identified case law or a regulation requiring the ALJ to specifically reference SSR 12-2P in her decision, which Plaintiff did not, the ALJ's failure to do so does not require the Court to set aside her finding when that failure has no bearing on the outcome. *See Robinson v. Sullivan*, 956 F.2d 836, 841 (8th Cir. 1992).

Plaintiff heavily relies on the Eighth Circuit's remarks in *Tilley v. Astrue*, 580 F.3d 675 (8th Cir. 2009). In *Tilley*, the Eighth Circuit concluded that the ALJ erred in failing to consider the claimant's disabling symptoms caused by fibromyalgia. The Eighth Circuit remarked that "fibromyalgia is an elusive diagnosis," and that the claimant's complaints corresponded "directly with the disorder's characteristics: chronic widespread aching and stiffness, involving particularly the neck, shoulders, back, and hips, which is aggravated by the use of the affected muscles." *Id.* at 681. The Court stated that the

claimant was repeatedly treated by multiple doctors for pain associated with fibromyalgia and underwent "substantial pain management" treatments. The claimant's doctors opined that she could not perform light work.

This case is distinguishable. Plaintiff complained infrequently about fibromyalgia and received minimal treatment. Her complaints primarily involved her lower extremities and appear to have been attributed to edema rather than fibromyalgia. The ALJ discredited Plaintiff's complaints of loss of grip strength because her medical records indicated that Plaintiff rarely, if ever, complained about hand or upper body pain, and Plaintiff's physicians opined that she had normal muscle strength and range of motion in her upper extremities. The ALJ's conclusion is supported by substantial evidence. [TR- 16, 270, 295, 409, 411, 418, 435, 466]. Accordingly, the ALJ did not err in her determination of how Plaintiff's fibromyalgia symptoms affected her ability to work or in failing to explicitly reference SSR 12-2P.

### B. The ALJ's Evaluation of Third-Party Statements

The second point of error Plaintiff identifies is the ALJ's failure to discuss and consider an Adult Function Report filled out by a third party. The third party stated Plaintiff could not bend over to put on her shoes, needs regular assistance with standing and mobility, cannot hold her hands over her head, cannot eat because of digestive problems, and requires a portable toilet because of difficulty with mobility.

When determining a RFC, "statements of lay persons regarding a claimant's condition must be considered when an ALJ evaluates a claimant's subjective complaints of pain." *Willcockson v. Astrue*, 540 F.3d 878, 880-81 (8th Cir. 2008). Though an ALJ is

not required to accept all lay testimony, "it is almost certainly error simply to ignore it altogether." *Id.* at 881. However, failure to explain why evidence from a lay person was rejected does not always require remand. *Id.* at 880. If third-party evidence supporting a claimant's complaints was the same as evidence that the ALJ rejected for reasons specified in the opinion, an arguable deficiency in opinion-writing technique does not require remand when it will not affect the outcome. *Id.*

While the ALJ did not specifically address the third-party's Adult Function Report, the ALJ's opinion makes it clear she considered the statements within it. In acknowledging that the claimant alleged a variety of physical and mental impairments that affect her daily activities and ability to work, the ALJ cited to three reports completed by Plaintiff and the third-party function report. [TR-14]. Further, the third party report largely mirrors the Plaintiff's complaints, which were soundly addressed in the ALJ's decision and otherwise unchallenged by Plaintiff, but for the fibromyalgia analysis discussed above. For instance, the third party stated Plaintiff needed to prop her feet up and use a cane, [TR-171, 177], however, the ALJ remarked that Plaintiff's treating physician specifically opined that neither of these treatments was necessary. [TR-17]. The third party also stated Plaintiff was in and out of the hospital 2-4 times a month, [TR-175], but the ALJ remarked that as of the date of her hearing, Plaintiff had not sought medical treatment in nine months. [TR-16].

This case is similar to *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011). In *Buckner*, the ALJ did not explicitly address the claims that the claimant's girlfriend made about his condition and the Eighth Circuit could not "determine from the record whether

8

the ALJ considered her statements at all." *Id.* at 559-60. Nonetheless, the Eighth Circuit determined that this failure did not require remand because the same evidence that the ALJ referred to in discrediting the claimant's allegations also discredited his girlfriend's allegations. *Id.* at 560.

In this case, the ALJ's opinion is less deficient than the ALJ's opinion in *Buckner*. Where in *Buckner*, the Eighth Circuit could not determine whether the ALJ had even considered the third party statement, in this case, it is at least clear that the ALJ considered the statement, even if she did not specifically give reasons for discrediting it. Further, the reasons the ALJ gave for discrediting Plaintiff's allegations can also be used to discredit the third party's allegations. The ALJ's credibility determination is otherwise unchallenged by Plaintiff and so remand is not necessary.

The ALJ did not commit reversible error in her analysis of how Plaintiff's fibromyalgia affects her ability to work and did not err in failing to specifically address and discredit a third party statement about Plaintiff's limitations. Accordingly, the Commissioner's decision denying disability benefits is affirmed.

### III. Conclusion

For the reasons set forth above, the Commissioner's decision is affirmed.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: April 8, 2014
Jefferson City, Missouri

9